**UNITED STATES of America, Plaintiff–Appellee,**

v.

**James WELLS, Defendant–Appellant.**

No. 98–1928.

United States Court of Appeals, Seventh Circuit.

Argued Aug. 4, 1998.

Decided Aug. 26, 1998.

Andrew B. Baker, Jr. (argued), Office of the United States Attorney, Dyer, IN, for Plaintiff–Appellee.

Gary T. Bell (argued), Spangler, Jennings & Dougherty, Merrillville, IN, for Defendant–Appellant.

Before POSNER, Chief Judge, and KANNE and DIANE P. WOOD, Circuit Judges.

POSNER, Chief Judge.

The defendant pleaded guilty to armed robbery and related offenses and was sentenced to 293 months in prison (almost 25 years). He complains about the district judge's refusal to give him a 3–level sentencing discount for acceptance of responsibility, U.S.S.G. § 3E1.1, and the judge's decision to give him a two-level increase for obstruction of justice. § 3C1.1.

Wells pleaded guilty without a plea agreement and does not deny his culpability or plead extenuating circumstances; and ordinarily these circumstances would entitle him to the acceptance of responsibility discount. § 3E1.1, Application Notes 1 and 2. The unusual further circumstance here is his refusal to disclose the whereabouts of the loot. The robbery netted him almost $700,000. So far as appears, he spent about $30,000 on a new car and other goodies, but the rest is unaccounted for. If he gambled it away or otherwise dissipated it, he would (as we shall see) undoubtedly say so. He does not say so. The inference is irresistible, and not even denied by his lawyer, that he has squirreled it away. His lawyer claims that this doesn't matter. The defendant fully and freely acknowledges his guilt of the crime of which he was charged. He therefore accepts full responsibility for the crime, and no more is required.

This argument reflects a deep misunderstanding of the concept of acceptance of responsibility. The purpose of the acceptance of responsibility discount is not only to induce guilty pleas, but also to identify defendants who, having demonstrated sincere remorse for their crime, are less likely either to delay the course of justice or to engage in further criminal activity when they complete their sentence. See *United States v. Hammick*, 36 F.3d 594, 600 (7th Cir.1994); *United States v. Beserra*, 967 F.2d 254, 256 (7th Cir.1992); *United States v. De Leon Ruiz*, 47 F.3d 452, 455 (1st Cir.1995); *United States v. Henry*, 883 F.2d 1010 (11th Cir.1989) (per curiam); see generally Michael M. O'Mear,

"Remorse, Cooperation, and 'Acceptance of Responsibility': The Structure, Implementation, and Reform of Section 3E1.1 of the Federal Sentencing Guidelines," 91 *Nw. U.L.Rev.* 1507 (1997). Talk is cheap, and so *Beserra* emphasizes that acceptance of responsibility is to be inferred from deeds, not from weepy mea culpas at sentencing. 967 F.2d at 256. (Judges fool themselves if they think they can infer sincerity from rhetoric and demeanor.) A guilty plea is a deed. And so is voluntary restitution. Where it is feasible, its refusal, demonstrating as it does a desire to retain the fruits of the crime, blocks any inference of remorse or repentance. The remorseful or repentant criminal would want to do everything possible to rectify the harmful consequences of his crime, and so if he still has any of the loot he will return it. Thus Application Note 1(c) counts voluntary restitution as a favorable circumstance for the granting of the acceptance of responsibility discount.

If authority is needed for what strikes us as a self-evident proposition, it can be found in Claudius's prayer soliloquy in *Hamlet* (Act III, sc. 3, ll. 36–72). By murdering Hamlet's father, the king of Denmark, Claudius had become king and also had married the king's widow. He is frank in acknowledging his crimes. "O, my offense is rank! It smells to heaven." He tries to pray for forgiveness, but realizes that this is impossible because

... what form of prayer
Can serve my turn? "Forgive me my foul murder"?
That cannot be, since I am still possessed
Of those effects for which I did the murder:
My crown, mine own ambition, and my queen.
May one be pardoned and retain th'offense?

The answer is "no," and it answers Wells's prayer for (partial) forgiveness as well. For he is still possessed of those effects for which he did the robbery.

The background to the alleged obstruction of justice is as follows. When Wells learned that there was a warrant out for his arrest, he turned himself in at a police station in Indiana, where the robbery had occurred. The police asked him what had happened to the money. He said that all of it except the $30,000 that he had spent on consumer dura-bles had been stolen from his car in Pennsylvania. He invited the police to look at the pry marks on the car, which Wells had parked outside the police station. The police were skeptical, and their skepticism was reinforced when an expert on such things informed them that despite the pry marks there was no indication of a forced entry into the car. Nevertheless the police investigated the alleged theft from the car to the extent of traveling to the place in Pennsylvania where Wells claimed that it had occurred to make inquiries.

He offers two reasons why his lie was not an obstruction of justice. The first is that since the crime of bank robbery was complete when the money was taken, its subsequent whereabouts and therefore his lie about those whereabouts were immaterial. That is, they were material to locating the money but not to investigating the bank robbery and prosecuting the robber. But this is obviously wrong, since we have just seen that his failure to return the part of the loot that he didn't spend is highly material to his sentence, and sentencing is part of the prosecution. Beyond that, the proceeds of a crime are evidence of the crime. *United States v. Sax*, 39 F.3d 1380, 1393–94 (7th Cir.1994). And beyond *that*, the tracing out of the consequences of a crime for the purpose of undoing them as far as it is possible to do is a responsibility of law enforcement and a requirement of complete justice. An interference with this stage of the criminal justice process is therefore an obstruction of justice even if the interference is immaterial to guilt or even to the sentence. *United States v. Gibbs*, 61 F.3d 536, 539–40 (7th Cir.1995).

Wells's second argument is that since the police didn't believe his lie, it did no harm. And it is true that an attempt at obstruction of justice that has no consequence (suppose that he had told the police that he had swallowed the money) is not a permissible basis for an obstruction of justice enhancement. *United States v. Barnett*, 939 F.2d 405, 407 (7th Cir.1991); *United States v. Solano–Godines*, 120 F.3d 957, 963–64 (9th Cir.1997). But this attempt did have a con-

sequence. It sent the police on a wild goose chase. Considering the amount of money involved, the police might have been thought derelict had they failed to follow up the lead supplied by Wells, dubious as it was. In any event, we do not think that he can complain of wasted efforts that he himself incited, even if a reasonable police force would have done nothing and so incurred no cost. Cf. *United States v. Taylor*, 135 F.3d 478, 483–84 (7th Cir.1998).

AFFIRMED.