In the
United States Court of Appeals
For the Seventh Circuit

No. 99-4302

United States of America,

Plaintiff-Appellee,

v.

Jose J. Arambula,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 99 CR 57--David F. Hamilton, Judge.

Argued November 27, 2000--Decided January 26, 2001

Before Bauer, Posner, and Easterbrook, Circuit Judges.

Bauer, Circuit Judge.  Jose J. Arambula
challenges the district court's enhancement of
his sentence for obstruction of justice and
denial to reduce for acceptance of
responsibility. We vacate the obstruction
enhancement, but affirm the denial of an
acceptance of responsibility reduction.

BACKGROUND

A.  Facts

A postal inspector suspected that a parcel
addressed from Greg Brown, 1302 Lowry Road,
Laredo, Texas to Joe Arambula at Courtyard by
Marriott Hotel in Indianapolis, Indiana contained
narcotics based on its size, weight, shape, and
mailing origin. Investigation revealed the Laredo
address was fictitious. The parcel underwent a
canine examination, which indicated that it
contained a controlled substance. Based on this
information, a federal search warrant was issued
for the parcel. Tests revealed that it harbored
two pounds, nine ounces of cocaine. Under court
authorization, an electronic transmitter was
placed inside the parcel with a counterfeit
substance mixed with a small amount of the
original cocaine.

Law enforcement officers then delivered the

parcel to the hotel desk and Arambula took it to his room. Arambula returned to the lobby to meet a man identified as Frederick L. Hand and escorted him to the room. Minutes later the electronic transmitter signaled that the parcel had been opened. The officers knocked and announced, asking that the door be opened. Receiving no response, but hearing movement inside, the officers forced entry and found Arambula near an open window and Hand sprawled on a roof about two floors below.

Arambula and Hand were arrested and properly warned. Arambula consented to a room search and agreed to speak with law enforcement agents. He confessed that he was in Indianapolis to sell the cocaine to Hand and that the sale had been arranged a month prior in Cincinnati. Arambula revealed that the source of the cocaine was Juan Medina Gonzales. He also admitted that a few months before this incident he had received additional parcels from Gonzales containing cocaine and marijuana.

A grand jury indicted Arambula, Hand, and other persons unknown with conspiracy to distribute cocaine and possession with intent to distribute cocaine under 21 U.S.C. sec. 841(a)(1) and sec. 846. Arambula pled guilty and agreed to provide complete and truthful information regarding his involvement and the involvement of others in distributing controlled substances. To fulfill his end of the plea agreement, he testified for the government in Hand's trial. The jury convicted Hand.

B.  Arambula's Sentencing Hearing

Arambula was subsequently sentenced by the same judge that presided over Hand's trial. The judge expressed his belief that Arambula's testimony at Hand's trial was not complete and truthful. The government conveyed its satisfaction with Arambula's testimony and considered it credible and complete. The government stood by the PSR, which recommended no obstruction of justice enhancement and recommended reductions under sec. 5C1.2, sec. 5K1.1 (substantial assistance), and sec. 3E1.1 (acceptance of responsibility). Arambula concurred with the government. The judge held to his finding that Arambula's testimony was false and raised his offense level for obstruction of justice and denied the reductions.

The judge began his ruling regarding the obstruction of justice enhancement by reciting the elements of perjury: "I believe he has provided false testimony; I believe he has done so willfully; and it goes to matters that are

material." Tr. at 33. The judge proceeded to discuss the first element--false testimony. The judge enunciated: "What I need to do is make a determination, as I said, based on the preponderance of the evidence, as to whether Mr. Arambula is providing truthful, complete information about his involvement and the involvement of others in this cocaine distribution conspiracy." Tr. at 35. The judge then outlined aspects of Arambula's testimony and concluded that it was not complete and truthful.

In determining that Arambula's testimony was false, the judge parsed telephone records unexplained at Hand's trial. Despite the gap in evidence at Hand's trial as to who made the telephone calls, and what was said during them, the judge believed that the extensive records were circumstantial evidence of a drug conspiracy larger than Arambula had revealed. He found the records in conflict with Arambula's claim that during his escapades in drug trafficking he had only dealt directly with Mauricio Inecencio and Hand, and indirectly with Gonzales. The judge believed that Arambula had been involved in other drug deals in Pittsburgh, Pennsylvania and Columbus, Ohio. The judge felt that Arambula "was holding back and protecting" other drug traffickers. Tr. at 11. The judge stated: "If he had been [more complete in his testimony], perhaps it would have been possible to make cases against" other players. Tr. at 42. Thus, Arambula's lack of forthrightness about others amounted to false testimony.

Further, the judge found that Arambula's false testimony was willfully given, because he believed that Arambula had concocted an "exit story" to blame Hand in order to protect others. The court credited Hand's defense, believing that the conspiracy was grander than Arambula revealed. At trial Hand's defense was that he was a small fish in a big pond. Arambula, however, testified that the pond was actually rather small (comprised of himself, Hand, Inecencio, and Gonzales), but that Hand was definitely a fish. As to the materiality element of perjury, the judge did not articulate specific findings. Indeed, the judge acknowledged that his concerns "[did] not go directly to Mr. Hand's guilt or innocence on the conspiracy charge against him." Tr. at 26. The judge noted that Arambula's testimony did not obstruct justice in the sense that he was trying to protect his co-defendant. Further, the judge recognized that Arambula's false testimony actually hurt Hand's defense, thus bolstering the government's case. The sentencing transcript is barren as to precisely why the sentencing judge found that Arambula's false testimony was material for the purposes of

the obstruction of justice enhancement.

DISCUSSION

   A defendant who attempts to or does obstruct or impede the administration of justice faces a two-point base offense level sentence increase for obstruction of justice. Obstruction of justice includes committing perjury. See U.S.S.G. sec. 3C1.1, cmt. n.4 (b) (2000). A sentence may be adjusted if the defendant provides perjurious testimony in either the defendant's own case or a co-defendant's case. Perjury for sentencing purposes has been defined as perjury under 18 U.S.C. sec. 1621. Thus, perjury is providing false testimony under oath or affirmation concerning a material matter with the willful intent to provide such false testimony, rather than as a result of confusion, mistake, or faulty memory. See United States v. Stokes, 211 F.3d 1039, 1045 (7th Cir. 2000) (citing United States v. Dunnigan, 507 U.S. 87, 94 (1993)).

   In enhancing a defendant's sentence for perjury, a district court ought to render specific and clear findings as to each element of perjury (false, willful, and material). Nonetheless, we have upheld adjustments when a court's findings have at least encompassed the factual predicates of perjury. See United States v. Freitag, 230 F.3d 1019, 1026 (7th Cir. 2000).

   The sum of Arambula's argument on appeal is as follows. While the sentencing judge specified the testimony it found false, the obstruction enhancement was erroneous because Arambula's false testimony at Hand's trial did not constitute perjury, as perjury is false testimony of a material matter. Citing United States v. Senn, 129 F.3d 886, 898 (7th Cir. 1997) (quoting United States v. Mustread, 42 F.3d 1097, 1106 (7th Cir. 1994)), Arambula protests that a matter is material only if it is crucial to the question of guilt or innocence. Since Arambula falsely testified to facts inconsequential to the question of Hand's guilt, these facts were not material, and thus not perjury. Arambula does not dispute that he provided false statements; rather, he rests his appeal on their materiality.


   Evidence is material when "if believed, would tend to influence or affect the issue under determination." U.S.S.G. sec. 3C1.1, cmt. 6 (2000). We have translated this to mean that false testimony is material if it is "'designed to substantially affect the outcome of the case.'" United States v. Galbraith, 200 F.3d 1006, 1014 (7th Cir. 2000) (citations omitted). To put a finer point on it, we have found false testimony

material when it was crucial to the question of guilt or innocence. See id.; Senn, 129 F.3d at 898 (quoting Mustread, 42 F.3d at 1106); see also United States v. Craig, 178 F.3d 891, 901-02 (7th Cir. 1999) (affirming obstruction enhancement where defendant falsely denied recruiting fictitious students in large scam because denial was material "to the question of her guilt"). An assessment of the materiality of false testimony to the issue under determination is crucial because "'obstruction of justice' refers to efforts to impede the process of legal justice . . . ." United States v. Buckley, 192 F.3d 708, 710 (7th Cir. 1999) (citations omitted). Thus, "not every instance of false testimony under oath warrants the enhancement," United States v. Gage, 183 F.3d 711, 715 (7th Cir. 1999), and "the materiality of the lie becomes a focus of inquiry because a lie that is immaterial to the justice process is not a potential interference with it." Buckley, 192 F.3d at 710. Therefore, the inquiry is whether Arambula's false testimony could tend to influence the issue under determination-- namely, did Hand conspire to possess cocaine with the intent to distribute it?

We view Arambula's false statements as immaterial to this issue and not affecting the outcome of the case. We liken Arambula's situation to those in United States v. Parker, 25 F.3d 442 (7th Cir. 1994) and United States v. Senn, 129 F.3d 886 (7th Cir. 1997). In Parker, we vacated an obstruction enhancement for a defendant who admitted his guilt, but falsely stated that he stole $200 rather than $1252 from a bank. See id. at 449. The obstruction enhancement was unwarranted because the false statement was not material to his guilt or innocence; he had admitted his guilt and the amount taken was not an element of the offense. Likewise, in Senn, the defendant admitted his guilt in a conspiracy to distribute drugs. The sentencing judge applied the obstruction enhancement because the defendant had lied about some of the details of his involvement; specifically, about what had happened to the marijuana after he agreed to accept it. Relying on Parker, we vacated the enhancement because his false testimony about these details was not material. We reasoned:

It does not matter whether Weaver drove off with the marijuana and sold it, whether he drove off with it and gave it away, or whether he drove off without it. By agreeing to accept the marijuana in lieu of cash, he admitted his involvement in the conspiracy to distribute marijuana.

Id. at 899. We found that the "prevarications on the details cannot be considered crucial to the

question of guilt." Id.

In this case, the district court had a beef with the fact that Arambula minimized the scope of the conspiracy as to other drug traffickers not on trial with Hand. Here, the defendant (Arambula) testified that the co-defendant (Hand) was guilty. Arambula fingered Hand and Hand was convicted. The district court, however, believed Arambula's finger ought to have pointed to others as well. But is this extra pointing material?

Certainly in a conspiracy case it is essential to define the conspiracy's scope. The Indictment defined the scope by charging Arambula, Hand, and others unknown with conspiring to distribute cocaine on or about April 12-14, 1999. While evidence about the entire conspiracy would have assisted the government in charging other players, the government was satisfied with Arambula's story and only put Hand on trial. 'Tis true, Arambula's minimization of the conspiracy probably hurt Hand's defense by undermining his claim that he was a small fry in a bigger scheme. This, however, does not detract from the fact there is not the slightest hint that Arambula's testimony that Hand was indeed a compatriot--the issue under determination--was false. We do not see how it would have been germane for the government to elicit testimony from Arambula that would not have aided the case at hand. Whether others were involved was not material to the question of Hand's guilt or innocence. It seems a needless complication to lead Arambula on a wild goose chase about individuals not seated at the defense table.

The government was satisfied with the scope of Arambula's testimony, and has not indicated that its investigation was impeded because Arambula limited his testimony to only Hand, Inecencio, and Gonzales. Quite to the contrary, it credits Arambula's testimony with helping to seal Hand's fate. Indeed, the government even reveals that it would not prosecute Arambula for perjury, and concedes that if it did, it would likely fail. So, any falsehood Arambula uttered did not seem to obstruct or impede the government's case. This is important because we must also look to whether the falsity impeded or obstructed the investigation, sentencing, or prosecution of the offense. See U.S.S.G. sec. 3C1.1(A). For example, in United States v. Francis, the obstruction enhancement was applicable because a defendant retracted statements he made about co-conspirator's involvement in a drug distribution scheme. See 39 F.3d 803, 811 (7th Cir. 1994). In affirming the obstruction enhancement, we believed that the retracted statements were material because the "criminal investigation of

the conspiracy was still underway and obviously any information concerning his co-conspirators was material evidence." Id. The retraction impeded the investigation and prosecution because the government had to file a new indictment dismissing the charges against a co-conspirator implicated by the retracted statement. See id. The retraction was material because it went to the heart of whether the individual was involved in the conspiracy; in other words, whether he was guilty or innocent. As mentioned, there is no notion here that Arambula's lies impeded or obstructed the investigation, sentencing, or prosecution of Hand.

Furthermore, the nature of the false testimony provided by Arambula is unlike that which we have previously found to merit an obstruction enhancement when one co-defendant testifies against another. The obstruction enhancement has been appropriate where a defendant testifies falsely that a co-defendant was innocent. See United States v. Kroledge, 201 F.3d 900, 905 (7th Cir. 2000). Testifying falsely to exculpate a co-defendant is material because it speaks to their guilt or innocence. See id. Certainly testimony as to whether someone is guilty or innocent is material to whether they are guilty or innocent. This situation is inapposite since Arambula did not testify that Hand was innocent. Quite to the contrary. Thus, since we find that Arambula's false testimony was not material to the issue under determination, we vacate the obstruction of justice enhancement.

The government briefly argues, citing United States v. Letchos, 316 F.2d 481, 484 (7th Cir. 1963), that even if Arambula's false testimony was not material to any elements of the offense, it was material to Arambula's credibility. Letchos involved a perjury prosecution under 18 U.S.C. sec. 1621 against a witness who falsely testified during cross-examination in the trial of a defendant charged with making false statements on his income tax returns. See 316 F.2d at 482. Prior to the trial, IRS agents interviewed the witness to gather evidence about whether the defendant had been a beer salesman during the years in which he claimed tax deductions for such activity. The witness told the IRS that he did not know the defendant. At trial, however, the witness testified for the defendant, asserting that he knew the defendant and that he had indeed been a beer salesman. On cross-examination, the government asked the witness whether he had previously told the IRS the opposite, and the witness denied having told the IRS such. The government impeached him with his prior inconsistent statement. The witness was subsequently tried for perjury for the false

testimony. The witness argued that his false testimony was not material. We disagreed, finding the testimony material to the question of the defendant's guilt for tax fraud. In so finding, we stated: "Impeachment of a witness goes to his credibility and questions on cross-examination for this purpose may be material in the sense required for a perjury conviction." See id. at 484. We later addressed this passage in Letchos in United States v. Akram, 152 F.3d 698 (7th Cir. 1998).

Akram involved a perjury conviction against the defendant under 18 U.S.C. sec. 1623(a), based on lies made during cross-examination during the defendant's own trial. See id. at 699. The defendant argued that his false testimony was not material. Relying on Letchos, the government argued that the statements were material because they went to the defendant's credibility. We reasoned that Letchos did "not say that questions on cross-examination are always material . . . ." Id. at 702. We went on to state that in determining whether false testimony is material, we are required "to evaluate whether the credibility of the defendant is an issue capable of influencing the jury." Id. We recognized that:

[C]ertain lies on cross-examination might be too trivial to count as being relevant to the question of credibility. Similarly, some cases might involve such irrefutable and objective proof that the issue of the defendant's credibility is itself a minor consideration and not one capable of influencing the jury's decision.

Id. We believe Arambula's case is one in which his false statements were not pertinent to the case at hand. Indeed, he testified truthfully to the material issue of whether Hand was a co-conspirator. Any irregularities as to the details of the involvement of others was of no matter for the purposes of resolving Hand's culpability. There was certainly objective proof of Hand's guilt (for example, the cocaine or the telephone records) upon which the jury's consideration could have safely rested. We sympathize with the district court's hunch that the drug distribution ring was larger than revealed. Nevertheless, the application of the obstruction enhancement was improper because the record has not born out that Arambula's testimony obstructed justice in the case against Hand.

Finally, we decline Arambula's request to have the district court reconsider its denial of a reduction for acceptance of responsibility. It was proper that the district court found that although Arambula implicated himself and Hand, he

diminished his role in and the true scope of the conspiracy, and thus did not accept responsibility. See Gage, 183 F.3d at 717 (affirming denial of reduction for acceptance of responsibility based on false representations by defendant because the "district court was entitled to conclude that [the defendant's] failure to come clean about the limits of his memory was inconsistent with a full acceptance of responsibility").

CONCLUSION

    We find error with the enhancement for obstruction of justice, but not with the denial for an acceptance of responsibility reduction. Therefore, Arambula's sentence is Vacated and Remanded to the district court for resentencing consistent with this opinion.