In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-3941

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

JOHN DELEON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 CR 249-1—**Matthew F. Kennelly**, *Judge.*

ARGUED FEBRUARY 10, 2009—DECIDED MAY 4, 2010

Before CUDAHY, WILLIAMS, and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* After withdrawing a guilty plea, John DeLeon went to trial to contest three charges against him on a theory of entrapment. The jury acquitted him of two drug-related charges but was unable to reach a verdict on the third charge, counterfeiting. DeLeon subsequently pleaded guilty to the counterfeiting charge without a plea agreement (sometimes referred to as a "blind plea"). The district court sentenced DeLeon to a

within-Guidelines 104 months. DeLeon challenges the calculation of his Guidelines range on two grounds. First, he argues that he should not have been subject to the obstruction of justice enhancement. *See* U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 3C1.1 (2007). Second, he argues that he should have been given the benefit of the acceptance of responsibility reduction. *See id.* § 3E1.1. For the reasons stated below, we disagree on both grounds and affirm.

## I. Background

John DeLeon and David Postma, along with a few other individuals, hatched a plan under which they would produce counterfeit money and use it to purchase drugs. But DeLeon was unaware that his primary partner in crime was also in cahoots with the government; Postma, DeLeon's landlord, was acting as a confidential informant and secretly videotaped many of their plan-related conversations and preparations. When DeLeon attempted to exchange $100,000 in counterfeit cash for five kilograms of (sham) cocaine that Postma procured, federal officials arrested him and charged him with conspiracy to distribute more than 500 grams of cocaine, 21 U.S.C. §§ 841(a)(1), 846, attempt to possess with intent to distribute more than 500 grams of cocaine, 18 U.S.C. § 2; 21 U.S.C. § 846, and counterfeiting U.S. currency, 18 U.S.C. §§ 2, 471.

DeLeon pleaded not guilty to all three charges. On April 14, 2006, three days before his trial was scheduled to begin, DeLeon appeared before the district court with two complaints: that he had not had the opportunity to

fully review the videotapes Postma made, and that he was dissatisfied with his appointed counsel, the third attorney he had received. The district court made arrangements for DeLeon to have access to video viewing equipment and moved the trial back one day but refused to grant DeLeon's request for new counsel. DeLeon protested that the last time he had spoken to his attorney was over two months ago, but the court dismissed his request for new counsel as untimely.

The afternoon before his trial was to begin, DeLeon again appeared before the court. This time, however, he sought to enter a guilty plea to all three charges. The district court engaged DeLeon in an extensive colloquy, during which DeLeon stated that he did not want to go to trial yet simultaneously felt pressured to plead guilty. The court told DeLeon that if he did not want to plead guilty he could proceed to trial the next day as scheduled. The court then recessed to give DeLeon an opportunity to meet with counsel to discuss his pleading options. Upon his return to the courtroom, DeLeon reaffirmed his desire to plead guilty to all three charges. The rest of the plea colloquy passed uneventfully, and the district court entered a finding of guilty.

Four months later, in August 2006, DeLeon, represented by new counsel, moved to withdraw his guilty plea. In his motion, DeLeon alleged that his previous attorney told him that he had not prepared for trial because he had a heavy caseload, and that he should plead guilty because no defense was prepared. DeLeon also asserted that he had not voluntarily pleaded guilty. The motion

was accompanied by a sworn declaration in which DeLeon stated that he had "reviewed the entire motion" and "verif[ied] that the facts contained therein are all true and accurate" to his knowledge. The district court held a hearing on the motion, at which DeLeon's previous attorney denied ever telling DeLeon that he was unprepared for trial due to a heavy caseload. The attorney also denied the allegation that he told DeLeon to plead guilty because there was no defense prepared. When DeLeon took the stand, he admitted on cross-examination that his attorney had not made either alleged statement.

The court expressed displeasure with the untruths DeLeon had included in his motion, but still granted the motion to withdraw the guilty plea. The court explained that it was granting the motion because the records from the April 14, 2006 hearing and DeLeon's April 17, 2006 plea colloquy reflected both DeLeon's genuine belief that his counsel was unprepared and the court's own shortcomings in failing to question DeLeon more extensively about the "irreconcilable differences" cleaving his relationship with counsel.

DeLeon eventually proceeded to trial in June 2007. He argued that he was entrapped into committing all three offenses. The jury acquitted him of the two drug-related charges but was unable to reach a verdict on the counterfeiting charge. The district court scheduled a status hearing for July, by which point DeLeon had decided to plead guilty to the counterfeiting charge rather than go through another trial. The court ordered

an updated Presentence Investigation Report ("PSR"), and after several continuances set DeLeon's sentencing for November 2007.

The PSR determined that DeLeon had 14 criminal history points, which placed him in criminal history Category VI, the highest category. *See* U.S.S.G. § 5A (Sentencing Table). DeLeon does not dispute the accuracy of the criminal history calculation. The PSR calculated DeLeon's offense level to be 31. The counterfeiting charge had a base offense level of nine, U.S.S.G. § 2B5.1(a), and the PSR added two levels because DeLeon manufactured the notes and possessed the materials to do so, U.S.S.G. § 2B5.1(b)(2); two levels because DeLeon had a leadership role in the conspiracy, U.S.S.G. § 3B1.1(c); two levels because DeLeon had obstructed justice by providing false testimony in both a pretrial affidavit and at his trial, U.S.S.G. § 3C1.1; and sixteen levels because it concluded that one of DeLeon's previous counterfeiting endeavors was "relevant conduct" that pushed his counterfeiting total above $1 million (but less than $2.5 million), U.S.S.G. §§ 1B1.3(a)(2), 2B1.1(b)(1)(I), 2B5.1(b)(1)(B). The PSR did not apply the two-level acceptance of responsibility reduction, U.S.S.G. § 3E1.1, noting that conduct resulting in an obstruction of justice enhancement generally precludes application of the downward adjustment, *see* U.S.S.G. § 3E1.1 cmt. n.4. The PSR used its two calculations to recommend a sentence ranging from 188 to 235 months.

At DeLeon's sentencing hearing, the district court concluded that the government failed to prove by a

preponderance of the evidence that the sixteen-level enhancement predicated on DeLeon's alleged "relevant conduct" was warranted. It found no common scheme or plan underlying DeLeon's counterfeiting episodes, which involved different "key coschemer[s]." Tr. 47, Nov. 19, 2007. It thus determined that the face value of the counterfeit items was $100,000, resulting in an enhancement of eight levels rather than sixteen. *See* U.S.S.G. §§ 2B1.1, 2B5.1. The district court found that the government carried its burden with respect to the obstruction of justice enhancement, however. Though it declined to classify DeLeon's trial testimony as obstructive, it reiterated its earlier finding that DeLeon testified falsely in his motion to withdraw his guilty plea and again when he told the court that he pleaded guilty voluntarily. The court determined that DeLeon's false statements were material.

The court lastly considered the application of the acceptance of responsibility reduction. *See* U.S.S.G. § 3E1.1. It agreed with DeLeon that application of the obstruction of justice enhancement does not necessarily require denial of the acceptance of responsibility reduction, but ultimately denied the reduction because it concluded that DeLeon had not satisfactorily demonstrated that it was applicable. It opined that DeLeon did not carry his "burden to show acceptance of responsibility," Tr. 53, Nov. 19, 2007, because he had not "expressed sincere remorse," *id.* at 21, or otherwise demonstrated "the type of acceptance that the guidelines talk about," *id.* at 53. The district court further found that DeLeon's decision to "put it all behind him . . . and plead guilty to the charge

on which the jury deadlocked by itself does not entitle him to acceptance of responsibility . . . ," *id.* at 53, particularly where DeLeon repeatedly and explicitly denied responsibility for the counterfeiting at his trial, *see* Tr. 64, June 20, 2007 ("If Dave didn't threaten me with losing my house, I didn't—I had no intention of making any counterfeit money. . . . Besides, if Dave didn't come to me with this deal, I wouldn't even have a connection to make counterfeit money for. If he didn't make me feel like I was going to lose the only house for me, Erica, and the kids to live in, I wouldn't have done this at all." ); *id.* at 80 (asserting, in response to cross-examination, that he had been forced and threatened into making counterfeit).

After making these adjustments, the court calculated DeLeon's offense level to be 23, which, coupled with his Category VI criminal history, resulted in a Guidelines range of 92-115 months. DeLeon requested a below-Guidelines sentence of 72 months, citing various 18 U.S.C. § 3553(a) factors including his family responsibilities and the disparity between his sentence and that of another person sentenced in connection with the same scheme. The court addressed DeLeon's concerns and other § 3553(a) factors but did not adopt DeLeon's suggested sentence. Instead, citing DeLeon's significant criminal history and apparent anger management issues, the court sentenced him to 104 months, right in the middle of the Guidelines range.

## II. Discussion

DeLeon challenges both the district court's application of the obstruction of justice enhancement and its denial of the acceptance of responsibility reduction. We consider his arguments in turn.

## A. Obstruction of Justice Enhancement

Under U.S.S.G. § 3C1.1, a defendant's offense level should be enhanced by two levels if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction." This provision is known as the "obstruction of justice enhancement," or, here, simply the "enhancement." The district court applied the enhancement because it found that DeLeon lied under oath during the course of his proceedings. We review the court's factual findings supporting the obstruction of justice enhancement for clear error. *United States v. Powell*, 576 F.3d 482, 498 (7th Cir. 2009). That means that "[t]he district court's factual findings will stand as long as they are 'plausible in light of the record in its entirety.'" *Id.* (quoting *United States v. White*, 368 F.3d 911, 916 (7th Cir. 2004), *vacated on other grounds by* 543 U.S. 1105 (2005)). We review de novo, however, whether those findings adequately support the application of the enhancement. *United States v. Anderson*, 580 F.3d 639, 648 (7th Cir. 2008).

The district court concluded that DeLeon "made untrue statements and did so intentionally as the law defines that

term" in his sworn motion to withdraw his plea. Tr. 51, Nov. 19, 2007. Specifically, the district court found that DeLeon lied in his sworn statement when he claimed that his previous attorney "had not prepared a trial defense or devised a trial strategy . . . in part from his case load," and lied again when he claimed that his previous counsel "began telling [him] to plead guilty." *Id.* The district court dismissed DeLeon's assertion that he simply overlooked those statements when he signed a declaration affirming the motion's truth, and noted that it "definitely relied on both of those two things in granting a hearing on the motion to withdraw the guilty plea." *Id.* Indeed, it opened the hearing by stating that "some representations were made in Mr. DeLeon's motion and the supporting papers about what [DeLeon's prior attorney] had said, and it seemed to me that it would be beneficial to get [the attorney's] testimony about those matters." Tr. 3, Nov. 30, 2006. The court clarified that it "heard other things at the hearing itself that [it] relied on in granting the motion," but nonetheless found DeLeon's statements about his attorney "quite clearly material." Tr. 51-52, Nov. 19, 2007.

The court also found DeLeon's statement that he was pleading guilty voluntarily to be false and material. The district court twice noted that this statement was not "essential to a finding of obstruction of justice," *id.* at 52, so the extent to which it relied on that statement in applying the enhancement is unclear. DeLeon nonetheless challenges the applicability of the enhancement to both his motion and plea colloquy statements. We direct our attention first to the statement about his attor-

ney's lack of preparedness and heavy caseload that DeLeon made in his motion.

Committing, suborning, or attempting to suborn perjury constitutes an obstruction of justice under U.S.S.G. § 3C1.1. *United States v. Gonzalez-Mendoza*, 584 F.3d 726, 730 (7th Cir. 2009). (Providing materially false information to a judge is also grounds for the application of the enhancement. U.S.S.G. § 3C1.1 cmt. n.4(f).) "Perjury" for sentencing enhancement purposes is equivalent to that defined in 18 U.S.C. § 1621. *See United States v. Dunnigan*, 507 U.S. 87, 94 (1993); *United States v. Arambula*, 238 F.3d 865, 868 (7th Cir. 2001). Thus, the enhancement is properly applied only when a defendant gives "false testimony under oath or affirmation concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *Arambula*, 238 F.3d at 868; *see also Gonzalez-Mendoza*, 584 F.3d at 730. The court's conclusion that DeLeon was willfully untruthful in making a statement is a finding of fact that we are reluctant to disturb; we generally give special deference to a district court's credibility determinations. *Gonzalez-Mendoza,* 584 F.3d at 730. Such determinations are reviewed only for clear error, a standard under which we reverse the district court only if we are "firmly convinced after we review all the evidence that a mistake has been made." *United States v. Orozco-Vasquez*, 469 F.3d 1101, 1107 (7th Cir. 2006). We are not even marginally convinced that the district court was mistaken in concluding that DeLeon willfully lied in his motion to withdraw his guilty plea.

DeLeon readily concedes the statement about his attorney's preparedness and caseload was false, but maintains it was immaterial. Materiality is a critical element of 18 U.S.C. § 1621, which renders it important to the enhancement here. The Sentencing Guidelines classify as "material" "evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination." U.S.S.G. § 3C1.1 cmt. n.6. DeLeon urges us to approach the question of materiality from a narrower perspective; he asserts that a statement can only be material if it is likely to affect the ultimate outcome of the judicial process—the defendant's guilt or acquittal. *See United States v. Craig*, 178 F.3d 891, 901 (7th Cir. 1999). While we have addressed the question of materiality in those terms, *see, e.g.*, *Arambula*, 238 F.3d at 868, we have also concluded that "a lie influencing a pretrial issue will, in an attenuated sense, influence the ultimate outcome of the case itself," *United States v. Galbraith*, 200 F.3d 1006, 1014 (7th Cir. 2000). Thus, "a falsehood told at a pretrial hearing is material if it is calculated to substantially affect the issue under determination at that hearing." *Id.* We see no reason to abandon the logic of *Galbraith* in our evaluation of the district court's assessment of materiality here.

DeLeon also contests the district court's determination that he had the requisite perjurious intent to implicate the enhancement. With respect to the caseload statement, he argues that because he recanted it when he took the stand at the hearing on the motion, he could not have intended it to affect any material issues in the case.

DeLeon purports to find a foundation for this argument in 18 U.S.C. § 1623(d), the statutory defense to perjury:

> Where, in the same continuous court or grand jury proceeding in which a declaration is made, the person making such declaration admits such declaration to be false, such admission shall bar prosecution under this section if, at any time the admission is made, the declaration has not substantially affected the proceeding, or it has not become manifest that such falsity has been or will be exposed.

This argument has some logical appeal—if obstruction of justice is defined in terms of perjury, it seems as though it should be defensible on those terms as well—but it lacks support in the text of U.S.S.G. § 3C1.1 and its application notes. The obstruction of justice enhancement can apply to any statement made to a judge that, if believed, "would tend to influence or affect the issue under determination." U.S.S.G. § 3C1.1 cmt. n.6; *see id.* cmt. n.4(f). Nothing in U.S.S.G. § 3C1.1 or its application notes suggests that defendants who later recant their attempts to obstruct justice avoid the enhancement merely because the court has yet to render its final decision. To the contrary, U.S.S.G. § 3C1.1 expressly reaches attempts by defendants to obstruct justice, and our circuit has made clear that "[a]ll that is required for obstruction of justice is that the act 'could affect, to some reasonable probability, the outcome of the judicial process; the [act] does not have to succeed in affecting the outcome.'" *United States v. Mayberry*, 272 F.3d 945, 949

(7th Cir. 2001) (quoting *United States v. Duncan*, 230 F.3d 980, 988 (7th Cir. 2000)); *see also United States v. Nobles*, 69 F.3d 172, 192 (7th Cir. 1995) (holding that a defendant's "ultimate lack of success for obstructing justice will not relieve his responsibility for his attempt to do so"). Both the Guidelines and our case law focus on the defendant's intent, and the false statement's potential influence, at the time the false statement is made, not at the time the court ultimately makes its decision. *See United States v. Dillon*, 905 F.2d 1034, 1039 (7th Cir. 1990) (upholding application of obstruction of justice enhancement when defendant provided the false name of a cocaine source to a government agent and recanted it the next day). Section 1623(d) is thus unavailing to DeLeon.

Even if 18 U.S.C. § 1623(d) applied, however, DeLeon's argument would still fall flat because he failed to satisfy either of its two prongs, immateriality (lack of a substantial effect on the proceedings) and exposure of the falsity before it has otherwise become manifest. The district court explicitly stated that it "definitely relied on" the statements contained in DeLeon's motion in "granting a hearing on the motion." Tr. 51, Nov. 19, 2007. It conceded that it relied on "other things" it learned at the hearing itself in making its ultimate decision to grant the motion, but reiterated that "those two [statements] were clearly material." *Id.* at 52. These statements regarding materiality satisfy the district court's burden of making "independent findings as to all of the elements of perjury . . . ." with respect to the materiality element. *United States v. Ellis*, 548 F.3d 539, 545 (7th Cir. 2008). The district court's factual finding of materiality is more

than plausible on the record, so we decline DeLeon's invitation to disturb it. *Powell*, 576 F.3d at 498.

DeLeon also departed from both the letter and spirit of the back half of 18 U.S.C. § 1623(d)'s immunizing provision, "it has not become manifest that such falsity has been or will be exposed." By the time DeLeon alerted the district court to the falsity of the caseload statement in his motion to withdraw his guilty plea, its falsity had been exposed by not one but two witnesses. DeLeon's former attorney and DeLeon's mother, both of whom testified weeks before DeLeon (the hearing was continued), categorically stated that the attorney never said he was unprepared, for any reason. Moreover, DeLeon did not affirmatively seek to correct the record by recanting the statement once he took the stand. He only conceded that his attorney never said "I am unprepared," or anything to that effect, after the government asked him about it three times on cross-examination. Tr. 37, Dec. 21, 2006.

Nor do we object to the district court's summary finding of intent. The district court's conclusion that DeLeon made the statements in his motion "intentionally as the law defines that term," Tr. 51, Nov. 19, 2007, is supported by the record. The attorney, DeLeon, and DeLeon's mother all categorically stated that the attorney never said he was unprepared, for any reason. Aside from DeLeon's assertion in the motion, there is not an iota of discussion about the attorney's caseload in the record. The only rational explanation for DeLeon's inclusion of it in the motion is its bolstering effect on the

unpreparedness and "he told me to plead guilty" claims. The district court found DeLeon's explanation that he overlooked the false statements when signing his declaration implausible, *id.*, which supports its conclusion that DeLeon intended to testify falsely. We see no error in the district court's finding. *See United States v. Bryant*, 557 F.3d 489, 501 (7th Cir. 2009) ("The district court simply based its determination . . . on its evaluation of the sworn statements of Mr. Bryant and his former attorney. We cannot say that the district court clearly erred in reaching its conclusion.").

The question then becomes whether DeLeon's false statement about his attorney's lack of preparation and heavy caseload supports the application of the obstruction of justice enhancement. We give this question a plenary review, *see Anderson*, 580 F.3d at 648, and we conclude that the answer is yes. Fabricating a story to increase the probability that the district court will act in a specific way is quite troubling and is precisely the type of conduct that the obstruction of justice enhancement was designed to deter. The statement DeLeon reported to the court was particularly troubling in this respect because it indicated a possibility that other indigent defendants whose cases the court (and other courts) entrusted to DeLeon's attorney could have been receiving inadequate representation as well. The American Bar Association has recognized that "in many cases, indigent defense attorneys fail to fully conduct investigations, prepare their cases, or advocate vigorously for their clients at trial and sentencing." Am. Bar Assoc. Standing Comm. on Legal Aid & Indigent Defendants,

Gideon's Broken Promise: America's Continuing Quest for Equal Justice 19 (2004), *available at* http://www.abanet.org/ legalservices/sclaid/defender/brokenpromise/fullreport. pdf (last visited Apr. 29, 2010). Thus, a problem like that DeLeon alleged may have been a canary in the coal mine of a much broader crisis, both with his attorney and the bar generally, and the district court was left with little choice but to treat it seriously. *See* Code of Conduct for United States Judges, Canon 3B(5). DeLeon's allegations put the court against a wall, and regardless of his ultimate retraction they impeded the forward progress of his case. *See* U.S.S.G. § 3C1.1.

Even though DeLeon ultimately acknowledged the falsity of the statement about his attorney's lack of preparation and heavy caseload, it was not without consequence. *See United States v. Wells*, 154 F.3d 412, 414 (7th Cir. 1998) (stating that obstruction of justice that "has no consequence . . . is not a permissible basis" for enhancement). DeLeon's statements went "well beyond a mere declaration of innocence." *United States v. Kroledge*, 201 F.3d 900, 908 (7th Cir. 2000). He intentionally concocted a scenario under which his guilty plea would have been improperly made, which "impeded . . . the administration of justice with respect to the . . . prosecution . . . of the instant offense of conviction." U.S.S.G. § 3C1.1. We therefore affirm the application of the obstruction of justice enhancement on the basis of this statement. *Cf. United States v. Dean*, 574 F.3d 836, 846 (7th Cir. 2009) (finding a defendant's statement under oath that he never sold methamphetamine sufficient to support the obstruction enhancement).

DeLeon's statement about his attorney's lack of prepara-
tion and heavy caseload alone supports the application
of the enhancement. We therefore need not address the
district court's other stated grounds for the enhance-
ment, DeLeon's allegation that his attorney "told me to
plead guilty" and, possibly, his conflicting statements in
open court about whether he was pleading guilty volun-
tarily or involuntarily. *United States v. Nurek*, 578 F.3d
618, 622 n.1 (7th Cir. 2009), *cert. denied*, ___ S. Ct. ___, 2010
WL 1525841 (Apr. 19, 2010) (No. 09-8147). We note, how-
ever, that both these statements were predicated upon
his contention that his attorney was unprepared: as a
consequence of his unpreparedness, the attorney
allegedly told DeLeon his only choice was to plead
guilty and then pressured him to do so. With the founda-
tion for these statements conceded to be false, and
properly deemed supportive of the enhancement, we are
skeptical about but decline to reach DeLeon's arguments
regarding the remaining statements.

## B. Acceptance of Responsibility Reduction

Pursuant to U.S.S.G. § 3E1.1, a defendant who "clearly
demonstrates acceptance of responsibility for his of-
fense" should have his offense level decreased by two
levels. The PSR did not recommend that DeLeon receive
the reduction. Likewise, the district court concluded
that DeLeon had not demonstrated acceptance of respon-
sibility in such a way as to receive the benefit of the re-
duction. The district court found that DeLeon's post-trial
decision to "put it all behind him . . . and plead guilty

to the charge on which the jury deadlocked by itself does not entitle him to acceptance of responsibility . . . ." Tr. 53, Nov. 19, 2007. It opined that this was not "the type of acceptance that the guidelines talk about," *id.*, and further noted that "[t]his is not a situation where he has expressed sincere remorse," *id.* at 21. We review the district court's factual determination that DeLeon did not accept responsibility for clear error. *United States v. Sellers*, 595 F.3d 791, 793 (7th Cir. 2010); *cf. United States v. Gilbertson*, 435 F.3d 790, 799 (7th Cir. 2006) ("[A]n appellate court is ill-equipped to assess whether a particular defendant is motivated by genuine acceptance of responsibility or by a self-serving desire to minimize his own punishment. Unlike the district court judge, we do not enjoy a 'front row seat' from which to assess [the defendant's] statements and demeanor." (quotations omitted)); U.S.S.G. § 3E1.1 cmt. n.5 ("[T]he determination of the sentencing judge is entitled to great deference on review.").

DeLeon argues that clear error is present here. He claims that the district court denied him the reduction solely because he chose to go to trial, notwithstanding his consistent admissions of responsibility for counterfeiting and his decision not to go to trial again after the jury was unable to reach a verdict. He contends that he did not contest any "essential factual elements of guilt" at his trial, *id.* cmt. n.2, and emphasizes that he was not convicted of any charge. He also points to U.S.S.G. § 3E1.1 cmt. n.1, which in his view contains three factors that should have tipped the district court's decision the other way: "truthfully admitting the conduct comprising the

offense(s) of conviction, and truthfully admitting . . . any additional relevant conduct," *id.* at n.1(a), "voluntary termination or withdrawal from criminal conduct or associations," *id.* at n.1(b), and "the timeliness of [his] conduct in manifesting the acceptance of responsibility," *id.* at n.1(h). As explained below, we find his arguments unpersuasive.

DeLeon's first argument is at its core an assertion that the district court punished him for exercising his right to trial. This argument would have some teeth if it were supported by the record. But it's not. The record indicates that the district court denied DeLeon the reduction because he failed to express the sort of "sincere remorse," Tr. 21, Nov. 19, 2007, the Guidelines contemplate, *see* U.S.S.G. § 3E1.1(a) (noting that a defendant must "clearly demonstrate[ ] acceptance of responsibility for his offense" to qualify for the reduction); *United States v. Boyle*, 484 F.3d 943, 945 (7th Cir. 2007) (noting that "the benefit [of the reduction] is reserved for those who show contrition and remorse"); *United States v. Johnson*, 227 F.3d 807, 816 (7th Cir. 2000) (denying the reduction where a defendant's threat against a confidential informant "belied any sense of remorse that should be attendant to an acceptance of responsibility"). The district court did bring up the fact that DeLeon went to trial on the counterfeiting charge, but it did so to highlight DeLeon's repeated testimony that he was not guilty because he was coerced. *See* Tr. 53, Nov. 19, 2007. For instance, DeLeon told the jury that he had "no intention of making any counterfeit money," Tr. 64, June 20, 2007, and that he was forced into counterfeiting, *id.* at 80. And

during his closing argument, DeLeon's attorney argued that "DeLeon was induced by the undercover informant to do this," Tr. 68, June 22, 2007, and told the jury that "you have to find that on Count 3 [the counterfeiting charge], too, John DeLeon was entrapped," *id.* at 99. The express *denial* of responsibility was the centerpiece of DeLeon's trial strategy, and only after it (partially) back-fired did he admit that he was guilty of counterfeiting.

DeLeon is correct in asserting that his decision to contest the counterfeiting charge at trial is not an auto-matic bar to his receipt of an acceptance of responsibility reduction. Indeed, "[i]n rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his con-stitutional right to a trial." U.S.S.G. § 3E1.1 cmt. n.2. The problem here is that DeLeon's case is not one of the exceptional ones. DeLeon went to trial not to make a constitutional challenge to a statute or its applicability to him, *id.*, but to argue that he was entrapped into com-mitting the conduct underlying all three charges. Even though he admitted to counterfeiting at trial, he was doing so in hopes of convincing the jury that, "I did it but it was somebody else's fault that I did it." *United States v. Rector*, 111 F.3d 503, 508 (7th Cir. 1997), *overruled on other grounds by United States v. Wilson*, 169 F.3d 418, 428 n.9 (7th Cir. 1999). The entrapment defense by its nature tends to negate an acceptance of responsibility, *id.*; blaming someone else for one's own actions is not the sort of "genuine contrition" the acceptance of responsi-bility reduction seeks to reward, *United States v. Woodard*, 408 F.3d 396, 397 (7th Cir. 2005).

In saying this, we do not hold that all defendants who raise a defense of entrapment are consequently precluded from receiving an acceptance of responsibility reduction; in some rare instances, a defendant who alleges entrapment may demonstrate through her pretrial statements and conduct sincere remorse for her actions. *See* U.S.S.G. § 3E1.1 cmt. n.2. That is not the case here, however, where DeLeon freely admitted that his "decision to go to trial on the counterfeiting charge as opposed to pleading guilty was [a] strategic one," Reply Br. 4, told the court that he "was telling you everything you wanted to hear so I can get through the [pleading] proceedings," Tr. 70, Dec. 21, 2006, and told the court only that he was sorry that "the decisions I made put me in the predicament to be entrapped, to be set up," Tr. 85-86, Nov. 19, 2007.

"[T]he sentencing judge is required to look beyond formalistic expressions of culpability and to determine whether the defendant has manifested an acceptance of personal responsibility for his offenses in a moral sense." *United States v. Cunningham*, 103 F.3d 596, 598 (7th Cir. 1996) (quotations omitted). DeLeon formally pleaded guilty after the jury hung on the counterfeiting charge, but "pleading guilty eventually, rather than immediately, is . . . a strike against acceptance points, for it does not fully spare the government the burden of pretrial preparation and gives the impression of holding out for a deal rather than cooperating from the outset." *Boyle*, 484 F.3d at 945. DeLeon may have saved the government some preparation by forgoing a second trial, but he put it

through its paces during the first one. We are not convinced that the district court erred by looking past DeLeon's belated guilty plea and determining that his earlier actions spoke louder than those crucial words.

We also note that "[c]onduct resulting in an enhancement under U.S.S.G. § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." U.S.S.G. § 3E1.1 cmt. n.4. "[A] defendant whose sentence was properly enhanced for obstruction of justice is presumed not to have accepted responsibility." *Gonzalez-Mendoza*, 584 F.3d at 730-31. This presumption can be overcome when "exceptional circumstances are present," *id.* at 731, but it is a rare occurrence. Here, then, DeLeon faced a situation in which it would be doubly rare for him to be able to demonstrate that he should receive the reduction: he went to trial and contested his guilt, *and* he obstructed justice. DeLeon's subsequent admission of guilt was simply insufficient in this case to satisfy the doubly heavy burden he needed to carry. *See United States v. Davis*, 442 F.3d 1003, 1010 (7th Cir. 2006) (denying the reduction where defendant "express[ed] her contrition, but only *after* pleading guilty to the crime"); *see also* U.S.S.G. § 3E1.1 cmt. n.3 (explaining that a guilty plea "constitute[s] signifiant evidence of acceptance of responsibility" but that evidence "may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility").

We are likewise unmoved by DeLeon's appeal to the application notes for U.S.S.G. § 3E1.1. DeLeon did not

voluntarily terminate or withdraw from criminal con-
duct in the sense the Guidelines seem to contemplate. *See*
U.S.S.G. § 3E1.1 cmt. n.1(b). The record indicates that
DeLeon had been working to turn his life around prior
to the offenses here; the district court explicitly took
into account his gainful employment, enrollment in
classes, and union membership at sentencing. Tr. 91,
Nov. 19, 2007. But nowhere does it indicate that *after*
getting wrapped up in the counterfeit-for-drugs scheme,
DeLeon had a change of heart and voluntarily removed
himself from the situation. To the contrary, the record
shows that DeLeon took a leadership role in the opera-
tion by recruiting an individual named Arebalo (who
separately pleaded guilty and received a 46-month sen-
tence) and proposed broadening the scope of the operation
by adding an armed robbery. *See id.* at 61, 84 & 90. Simi-
larly, the record supports a conclusion that DeLeon did not
manifest an acceptance of responsibility in a timely fash-
ion. *See* U.S.S.G. § 3E1.1 cmt. n.1(h). Even though he
admitted to counterfeiting throughout the proceedings,
he never formally accepted responsibility until after he
went to trial. *See United States v. Samuels*, 521 F.3d 804, 817
(7th Cir. 2008). The district court was justified in
weighing this factor against DeLeon.

The district court's weighing of the first factor, truthful
admission of conduct and relevant conduct, *see id.* cmt.
n.1(a), is a closer question. Yet this factor is but one of
eight nonexclusive "appropriate considerations" for the
district court, *id.*, and we are not well positioned to second
guess the district court's assessment of DeLeon's sincerity.
*See Gilbertson*, 435 F.3d at 799. We are not left with a

definite and firm conviction that the district court was mistaken in denying the acceptance of responsibility reduction, notwithstanding DeLeon's professed acceptance of responsibility, so we affirm its denial of the reduction.

### III.  Conclusion

The district court properly applied the obstruction of justice enhancement and did not err in denying the acceptance of responsibility reduction. DeLeon's sentence of 104 months is therefore AFFIRMED.