NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued March 5, 2014
Decided September 2, 2014

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 13-2907

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| v. | No. 11-CR-00920 |
| GEORGE KASP *Defendant-Appellant.* | John F. Grady, *Judge.* |

**O R D E R**

George Kasp was arrested during a sting operation when he attempted to sell heroin to a police informant. In moving to suppress drugs found after his arrest, Kasp submitted affidavits swearing that police misinterpreted his coded words in recorded phone calls with the informant, and therefore the police had no probable cause to arrest him for possessing heroin. After his motion to suppress was denied, Kasp pleaded guilty and admitted that, contrary to his sworn assertions, the police had correctly interpreted his recorded phone

conversations. Consequently, the court added two levels to Kasp's base offense level for attempting to obstruct justice by lying about those phone conversations. Kasp appeals his sentence, arguing that his lies were not material to the judge's denial of the motion to suppress. Because his lies, if believed, could have changed the outcome of the motion, they were material; therefore, we reject his contentions and affirm.

**Background**

In advance of a sting operation, an informant working with Chicago police agreed to lead police to his heroin supplier, George Kasp. The informant had identified Kasp in a photo and said that he had bought heroin from Kasp in the past. The informant also reported that Kasp was involved in a criminal street gang. Officers confirmed that Kasp had multiple prior felony convictions.

With this background information in hand, in December 2011 the police set up the sting. They recorded a series of phone calls between Kasp and the informant. At the prompting of police, the informant called Kasp on December 29 to order 200 grams of heroin. During their first conversation that day, Kasp asked the informant if he wanted "two times" (which the police recognized as code for 200 grams of heroin). The informant responded, "yeah," and Kasp acknowledged "I got you." Later the same day Kasp phoned the informant and confirmed, "what you want, sleeves? Two sleeves?" (which the officers understood to be another code for a quantity of narcotics). Again, the informant agreed and suggested they meet at a sandwich shop in Chicago, where he previously had bought heroin from Kasp.

When Kasp entered the shop, two officers approached him and frisked him, and uncovered heroin inside his pants pocket. The officers arrested Kasp and brought him to the station for questioning, where he waived his *Miranda* rights and consented to a search of his apartment. During the questioning, Kasp admitted that, after his phone calls with the informant, he had brought 200 grams of heroin to the sandwich shop. Police later searched Kasp's apartment where they uncovered a handgun, ammunition, 15 pounds of cannabis, a large quantity of cash, and drug-trafficking paraphernalia. He was indicted for possessing heroin and marijuana with intent to distribute, 21 U.S.C. § 841(a)(1), and possession of a firearm by a felon, 18 U.S.C. § 922(g).

After his indictment Kasp moved to suppress the drugs and other evidence uncovered. He argued that the officers did not have probable cause to arrest him or even reasonable suspicion to frisk him. The phone calls, he insisted, did not suggest that a drug deal would take place at the sandwich shop because, he swore by affidavit, he went there only to talk to the informant. Moreover, he argued, in one of the recorded phone calls, Kasp had told the informant he was "not gonna do [his] thing" because he believed police were monitoring him. Having heard this comment, Kasp insisted that the officers must have known that no drug deal would take place on December 29. Kasp urged the court to hold an evidentiary hearing to resolve "the significant discrepancies between the government's interpretation" and his "sworn affidavit interpreting the events" that occurred before his arrest.

Before it would hold an evidentiary hearing on the motion to suppress, the court instructed Kasp to specify in another affidavit all the errors in the government's understanding of the slang and ambiguous language in the phone calls. Kasp did so. In his second affidavit, he again swore that he did not arrange a drug deal with the informant on December 29, and he explained that they were discussing only the possibility of doing drug business in the future. Kasp also offered alternative meanings to ambiguous and slang terms in the phone calls. When he said "two times," he explained that he meant that he was not asking about a drug quantity, but asking if the informant was going to visit his girlfriend and "two-time" (be unfaithful to) his wife. And when he asked the informant if he wanted "two sleeves," he said that he was asking the informant which drugs he wanted to discuss at the meeting, marijuana or heroin.

The court denied Kasp's motion to suppress. It found that the officers had probable cause to believe Kasp would be carrying narcotics when he arrived at the sandwich shop on December 29. The judge explained that he based his ruling on both the background information the officers had about Kasp before the sting began as well as the recorded telephone conversations between Kasp and the informant.

After the denial of his motion to suppress, Kasp pleaded guilty to possession with intent to distribute heroin and possession of a firearm by a felon. In the plea agreement, he admitted that he had agreed to sell to the informant 200 grams of heroin, and brought that amount with him to the sandwich shop. At sentencing the district judge found that Kasp's earlier false statements in his affidavit were material because "his lies … could have affected my ruling on his motion to quash and suppress." The judge elaborated:

> Had I found that his interpretation of the conversations was correct, … it's conceivable that I would have found that even though the officers misconstrued some of the terms that were used by the defendant in his conversations with the CI, they still had reasonable grounds for the arrest because their interpretation was not clearly unreasonable. But I also could have found to the contrary; namely, that because the defendant didn't say anything that could reasonably have led them to believe that he was on his way to the hot dog stand with drugs in his pocket for the purpose of delivering them, that they had no reason to believe that he would have drugs on him when he arrived at the hot dog stand and, therefore, no reasonable basis to either stop him or arrest him.

## Analysis

Kasp's only challenge on appeal concerned the materiality of his admitted lies about the meaning of his recorded phone conversations. The court said they were material because it believed the first translation. The suppression decision could have gone the other way. Nevertheless, Kasp contends the two-level increase was inappropriate. He insists that his version of the recorded conversations was irrelevant because the officers had probable cause to arrest him at the sandwich shop independent of what he had said on the phone to the informant and regardless of his interpretation of the coded words.

The sentencing guidelines permit a two-level increase to an offense level if a defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." U.S.S.G. § 3C1.1. Committing perjury may warrant the enhancement. *United States v. Taylor*, 637 F.3d 812, 817 (7th Cir. 2011); *United States v. Arambula*, 238 F.3d 865, 868 (7th Cir. 2001). Perjury occurs when a witness wilfully and intentionally swears to false, material testimony. *United States v. Dunnigan*, 507 U.S. 87, 94 (1993); *United States v. Riney*, 742 F.3d 785, 790 (7th Cir. 2014). We review factual findings supporting application of § 3C1.1 for clear error, and we review de novo whether those facts support applying the guideline increase. *Riney*, 742 F.3d at 790; *United States v. DeLeon*, 603 F.3d 397, 402 (7th Cir. 2010).

The statements in Kasp's affidavit concerned a material matter because they were capable of influencing the district court's decision on his motion to suppress. As used in the Guidelines, a material statement is one that, "if believed, would tend to influence or affect the issue under determination." U.S.S.G. § 3C1.1 cmt. n.6. Application of the guideline is appropriate even if the false statement does not *actually* affect the issue under determination. *United States v. Grigsby*, 692 F.3d 778, 785 (7th Cir. 2012). It is enough that the statement *could* (to a reasonable probability) affect the outcome of the process, or could influence the decision of the court to which it was addressed. *Id.*; *United States v. Buckley*, 192 F.3d 708, 710 (7th Cir. 1999).

The district judge in this case is uniquely qualified to assess the potential effect of Kasp's lies on the judge's own ruling. He expressly found that the lies "could have affected [his] ruling on the motion to quash and suppress." And he explained why: the judge was open to letting Kasps's description of the events influence how the judge evaluated the reasonableness of the officers' reactions. Moreover, Kasp himself told the district court that the discrepancies between the officers' interpretation of the conversations and his own version of them were "significant." Under these circumstances, it was not clear error for the district court to find that Kasp's statements could have influenced the outcome of the motion. *See DeLeon*, 603 F.3d at 403; *United States v. Galbraith*, 200 F.3d 1006, 1014–15 (7th Cir. 2000).

Kasp responds that the lies must have been immaterial because, in denying the motion to suppress, the district court found that the police knew enough, apart from the phone calls, to justify the search. This is not true. In denying the motion to suppress and concluding that the officers had probable cause for the arrest and search, the court relied on more than just the background information that the officers knew about Kasp. The court specified that it also relied on "the defendant's recorded telephone conversations with the CI." Although, it is true, the judge did not credit Kasp's version of those conversations, the decision to discredit a statement does not mean that the statement did not concern a material matter. *See United States v. Gonzalez-Mendoza*, 584 F.3d 726, 730 (7th Cir. 2009) (affirming application of enhancement where defendant lied in affidavit supporting motion to suppress but court did not believe lies).

Because Kasp's lies about the phone conversations could have affected the ruling on the suppression motion, the lies were material. Material lying is precisely what the obstruction enhancement is designed to deter, *Grigsby*, 692 F.3d at 785; *DeLeon*, 603 F.3d

at 405; *Buckley*, 192 F.3d at 710, so the enhancement was legally proper. Accordingly, the judgment is AFFIRMED.

AFFIRMED.