In the

# United States Court of Appeals
## For the Seventh Circuit

No. 11-1277

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

JON BURGE,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08-CR-846—**Joan Humphrey Lefkow**, *Judge*.

ARGUED MARCH 29, 2012—DECIDED APRIL 1, 2013

Before KANNE, ROVNER, and WILLIAMS, *Circuit Judges*.

WILLIAMS, *Circuit Judge*. Former Chicago Police Commander Jon Burge presided over an interrogation regime where suspects were suffocated with plastic bags, electrocuted until they lost consciousness, held down against radiators, and had loaded guns pointed at their heads during rounds of Russian roulette. The use of this kind of torture was designed to inflict pain and instill fear while leaving minimal marks.

When Burge was asked about these practices in civil in-
terrogatories served on him years later, he lied and
denied any knowledge of, or participation in, torture
of suspects in police custody. But the jury heard over-
whelming evidence to contradict that assertion and
convicted Burge for obstruction of justice and perjury.
Burge raises several challenges to his convictions on
appeal, which we do not find persuasive because the
evidence shows that he lied when he answered the inter-
rogatories, his false statements impeded an official pro-
ceeding, and they were material to the outcome of the
civil case. Overall, we conclude that no errors were com-
mitted by the court and Burge received a fair trial. Finally,
Burge objects to the district court's reference to a victim
impact letter at his sentencing, but it is well established
that hearsay is admissible at sentencing hearings, so
we affirm.

## I. BACKGROUND

For many years a cloud of suspicion loomed over
the violent crimes section of the Area 2 precinct of the
Chicago Police Department (CPD) located on Chicago's
south side. Jon Burge joined the CPD in 1970 and rose
to commanding officer of the violent crimes section in
the 1980s, but his career was marked by accusations
from over one hundred individuals who claimed that
he and officers under his command tortured suspects in
order to obtain confessions throughout the 1970s and
1980s. Burge was fired in 1993 after the Office of Profes-
sional Standards investigated the allegations, but he was

not criminally charged. Years later the Circuit Court of Cook County appointed special prosecutors to investigate the allegations of torture, but due to statutes of limitation, prosecutors never brought direct charges of police brutality against Burge. Eventually, the City of Chicago began to face a series of civil lawsuits from victims seeking damages for the abuse they endured.

In one lawsuit filed in 2003, Madison Hobley sought damages for being physically beaten and suffocated with a typewriter cover while being interrogated at Area 2 in 1987. *Hobley v. Burge, et al.*, No. 03 C 3678 (N.D. Ill.). Although Hobley did not allege that Burge had personally participated in his abuse, he sought to prove that the CPD had a policy and practice of torturing confessions from suspects. He also claimed that Burge was aware of this practice and requested discovery from Burge related to this policy.

During discovery, Burge responded to two sets of interrogatories regarding his involvement in alleged abuse at Area 2. Question 13 of the first set of interrogatories asked Burge to state if he had ever used or was aware of any other officers using "any form of verbal or physical coercion of suspects" including "deprivation of sleep," "physical beatings or hangings; the use of racial slurs or profanity," or "the use of physical objects to inflict pain, suffering or fear, such as firearms, telephone books, typewriter covers, radiators or machines that deliver an electric shock." Burge objected to this question, but responded, "I have never used any techniques set forth above as a means of improper coercion of suspects while

in detention or during interrogation." Question 14 contained similar language to Question 13, and asked Burge to state if he was "aware of any Chicago Police Officer, including but not limited to officers under [his] command" ever using these techniques. Again, Burge objected to this question, but responded, "I am not aware of any." Burge signed his name at the end of the last answer, but the document did not contain an oath.

Question 3 in the second set of interrogatories focused on Hobley's allegations that he was beaten and suffocated with a typewriter cover and asked whether such practices were "consistent with other examples of physical abuse and/or torture on the part of Chicago Police officers at A2 which [Burge] observed or had knowledge of." Burge answered, "I have not observed nor do I have knowledge of any other examples of physical abuse and/or torture on the part of Chicago police officers at Area 2." The answers from this second set of interrogatories were signed by Burge, notarized, and given under the following oath: "I, Jon Burge, after first being duly sworn, state on oath that I have read the foregoing . . . and that the answers therein are true and correct to the best of my knowledge and belief." This second set of answers was signed by Burge and given under oath.

On October 18, 2008, the government alleged that Burge's responses to the interrogatories were false and indicted him on two counts of obstruction of an official proceeding under 18 U.S.C. § 1512(c)(2) and one count of perjury under 18 U.S.C. § 1621(1). At trial, the govern-

ment called multiple witnesses to testify about the methods of torture and abuse used by Burge and others at Area 2 in order to establish that Burge lied when he answered the interrogatories in the *Hobley* case. While the issues in this appeal do not turn on the specific details of suffering caused under Burge's watch, the witnesses at trial detailed a record of decades of abuse that is unquestionably horrific. The witnesses described how they were suffocated with plastic bags, electrocuted with homemade devices attached to their genitals, beaten, and had guns forced into their mouths during questioning. Burge denied all allegations of abuse, but other witnesses stated that he bragged in the 1980s about how suspects were beaten in order to extract confessions. Another witness testified that Burge told her that he did not care if those tortured were innocent or guilty, because as he saw it, every suspect had surely committed some other offense anyway. On June 28, 2010, the jury convicted Burge on all counts. He was sentenced to 54 months' imprisonment. This appeal followed.

## II. ANALYSIS

### A. Section 1512(c)(2) Obstructive Conduct Need Not Occur Before a Court

Before trial, Burge moved to dismiss Counts 1 and 3 in the indictment for failure to state an offense and he renewed the argument in a subsequent motion for judgment of acquittal. We review questions of law in a district court's ruling on a motion to dismiss an indict-

ment de novo. *United States v. Greve*, 490 F.3d 566, 570 (7th Cir. 2007).

Counts 1 and 3 of the indictment charged Burge with violating 18 U.S.C. § 1512(c)(2). Section 1512(c) provides:

> Whoever corruptly—
>
> > (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
> >
> > (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so,
>
> shall be fined under this title or imprisoned not more than 20 years, or both.

This section is a product of the Sarbanes-Oxley Act of 2002, Pub. L. 107-204, 116 Stat. 745, and represents a relatively new addition to the obstruction of justice statutes described in §§ 1501, 1503, 1512, and 1519.

To be liable under § 1512(c)(2), a defendant must obstruct or impede an "official proceeding." A separate section of the statute defines "official proceeding" as "a proceeding *before* a judge or court of the United States . . . or a Federal grand jury." 18 U.S.C. § 1515(a)(1)(A) (emphasis added). The parties do not contest that Hobley's civil suit qualifies as an "official proceeding" within the meaning of the statute. Nevertheless, Burge contends that his conviction cannot stand because his obstructive

conduct—false interrogation responses—did not occur "before" a judge.

Since Burge gave his false responses to written interrogatories and was not physically in court or being deposed, he maintains that the indictment does not state an offense under § 1512(c)(2).[1] Burge reaches this conclusion by transplanting § 1515(a)(1)(A)'s definition of "official proceeding" into the text of § 1512(c)(2), and then reads the two provisions as one. He reasons that the proper way to interpret the word "before" when reading the two provisions together is that § 1512(c)(2) requires obstructive conduct to occur *in or during* the official proceeding before a judge or court. In advancing this interpretation, Burge relies on *Dunn v. United States*, where the Supreme Court interpreted a perjury statute, 18 U.S.C. § 1623, as applying only to "statements given *in . . .* formal contexts," meaning, at minimum, in depositions taken under oath. 442 U.S. 100, 111 (1979) (emphasis added).

This is a novel interpretation of the statute, but one we must reject. Though § 1515(a)(1)(A) defines an official proceeding as one "before a judge or court," it does not require that obstructive conduct occur in the same location. How do we know this? First, the phrase "before a judge or court" in § 1515(a)(1)(A) only describes which *types* of proceedings can be considered "official," not *where* the criminal obstruction must occur. Obstruction

---

[1] Burge's argument does not turn on the fact that the first set of interrogatories was not given under oath.

of justice occurs when a defendant acts to impede the types of proceedings that take place before judges or grand juries. But the defendant need not interfere while court is actually in session to be held liable. Burge asks us to plug the phrase "before a judge or court" from one section of the statute into another and interpret it as applying to the location of the obstructive conduct. This construction is too strained.

Second, Burge's reading of § 1512(c)(2) is contradicted by the express language of another provision, § 1512(f), which provides: "For purposes of this section . . . an official proceeding need not be pending or about to be instituted at the time of the offense." We cannot infer a location requirement into § 1512(c)(2) when Congress has explicitly instructed that an official proceeding need not even be pending for a defendant to violate the provision.

It makes little sense to ignore the plain meaning of the text for at least one other reason. Section 1512(c)(1) covers obstructive conduct in the form of physical destruction of documents and records. Burge's counsel conceded at oral argument that it would be absurd to presume that Congress only intended to cover document destruction actually committed *in* a proceeding before a judge. Very few defendants shred incriminating papers in plain view of a presiding judge. Obviously, the statute must apply to destruction of documents performed in advance of an official proceeding.

Even though Burge's obstruction was of a different kind, his conduct still falls within the scope of § 1512(c)(2), which applies to a defendant who "*otherwise* obstructs,

influences, or impedes any official proceeding" (emphasis added). The expansive language in this provision operates as a catch-all to cover "otherwise" obstructive behavior that might not fall within the definition of document destruction. *See United States v. Aguilar*, 515 U.S. 593, 598 (1995) (interpreting similar language in 18 U.S.C. § 1503 as an "Omnibus Clause . . . prohibiting persons from endeavoring to influence, obstruct, or impede the due administration of justice" and concluding that the language is "general in scope"). Sections 1512(c)(1) and (2) are linked with the word "otherwise," so we can safely infer that Congress intended to target the same type of pretrial misconduct that might "otherwise" obstruct a proceeding beyond simple document destruction. *See Erlenbaugh v. United States*, 409 U.S. 239, 244 (1972) (stating that generally "individual sections of a single statute should be construed together"). False statements made during an official proceeding may be obstructive. But so too can misconduct that occurs in advance of the proceeding as long as the defendant "believe[s] that his acts will be likely to affect a pending or foreseeable proceeding." *United States v. Matthews*, 505 F.3d 698, 708 (7th Cir. 2007); *see also United States v. Reich*, 479 F.3d 179, 185 (2d Cir. 2007). In either situation, the defendant remains liable.

Very few circuit courts of appeal have addressed what qualifies as an "official proceeding" under § 1512(c)(2), but none (at least of which we are aware) has adopted

Burge's reading of the statute.[2] In fact, several of our

---

[2] After briefing was completed, Burge's counsel submitted a Fed. R. App. P. 28(j) letter citing *United States v. Binette*, 828 F. Supp. 2d 402 (D. Mass. 2011) as supplemental authority. In that case, the Securities and Exchange Commission initiated a preliminary investigation into the defendant's suspicious trading activity. The defendant made several false statements to the investigators, but argued that he was not guilty of obstructing an "official proceeding" under §1512(c)(2). The district court agreed, reasoning that the disputed phone call between the SEC investigators and the defendant was not a "'formal convocation' called by the agency where Defendant was directed to appear. Instead, the agency's investigators chose to give their conversations with Defendant a far more casual appearance." 828 F. Supp. 2d at 404. There was nothing "casual" about the interrogatories Burge received here in a pending federal lawsuit, and unlike the defendant's responses in *Binette*, Burge's answers to the second set of interrogatories were given under oath. Moreover, the court in *Binette* did not address Burge's claim that the obstructive conduct at issue must occur in front of a judge or court, and gave no indication that the statute should be read in such a way.

Burge also argues that the government did not establish that he took an "oath" when he answered the second set of interrogatories because the notary public testified that she did not "administer" an oath, but rather notarized Burge's signature. But the evidence at trial showed that the notary showed him the document containing the oath, directed his attention to the oath, and then asked him to confirm that it was correct. As the district court pointed out, he signed his name below the oath in the presence of the notary, and so no more formality

(continued...)

sister circuits have upheld convictions under § 1512(c)(2) for defendants whose conduct occurred well in advance of any official proceeding. *See, e.g.*, *United States v. Townsend*, 630 F.3d 1003, 1014 (11th Cir. 2011) (phone calls warning co-defendant that a search warrant was about to be executed were sufficient to support § 1512(c)(2) conviction); *United States v. Phillips*, 583 F.3d 1261, 1263-64 (10th Cir. 2009) (affirming conviction for disclosing an undercover officer's identity to the subject of a grand jury investigation). In a case strikingly similar to this one, the Second Circuit held that false answers given by prison guards on a "Use of Force Report" could constitute obstruction of a Bureau of Prisons civil investigation attempting to uncover prisoner abuse. *United States v. Perez*, 575 F.3d 164, 169 (2d Cir. 2009).

And *Dunn*, a case that involved a different statute with different elements, does not support Burge's position. Section 1623 is titled "false declarations *before* grand jury or court" and it encompasses perjury made "*in* any proceeding" (emphasis added). Section 1512(c)(2)'s language is simply not comparable. Burge's challenge to Counts 1 and 3 on these grounds must therefore fail.

---

[2] (...continued)
was needed. *See United States v. Yoshida*, 727 F.2d 822, 823 (9th Cir. 1983) ("No particular formalities are required for there to be a valid oath under [§ 1621]. It is sufficient that, in the presence of a person authorized to administer an oath, . . . the affiant by an unequivocal act consciously takes on himself the obligation of an oath, and the person undertaking the oath understood that what was done is proper for the administration of the oath . . . .").

### B. Merits of Civil Suit Irrelevant to Burge's Criminal Liability

On June 3, 2010, the government disclosed to Burge during trial that an Assistant United States Attorney had held a 2008 interview with Hobley's cellmate while the two were both in prison. The cellmate, Darryl Simms, told prosecutors that Hobley treated Simms as a confidant and admitted to being guilty of the arson and murder for which he had been imprisoned. According to the cellmate, Hobley said he had confessed to police due to guilt about accidentally killing his son in an arson he had intended would only kill his wife. Simms said that Hobley never mentioned in these conversations that he had been tortured or abused while under arrest.

After this disclosure, Burge moved for a mistrial or in the alternative to introduce Simms's testimony to the jury. The district court denied these requests. Burge argues on appeal that mistrial should have been granted on the grounds that Hobley's civil suit "was a fraud." We review a district court's exclusion of evidence and denial of a motion for a mistrial for abuse of discretion. *United States v. Powell*, 652 F.3d 702, 709 (7th Cir. 2011).

Burge cites *Napue v. Illinois* and related cases for the proposition that a "conviction obtained through the use of false evidence, known to be such by representatives of the State, must fall." 360 U.S. 264, 269 (1959). But Burge misapprehends the import of the rule he relies upon. Burge is correct that prosecutors cannot advance false evidence to the jury in order to get a conviction. However, there is no indication that prosecutors relied upon false evidence in trying Burge since Hobley did not testify

at trial. The government never took a position in the indictment or before the jury on whether Hobley had been tortured or whether he was lying. The jury was simply advised that the civil suit was brought to determine, in part, whether a policy or practice of torture existed in the Chicago Police Department. We cannot consider the conviction "tainted" when Burge fails to identify any false evidence actually introduced by the government.[3]

Furthermore, the relevant question for the jury was not whether Hobley's allegations were well-founded, but whether Burge lied when he responded to the interrogatories. Burge's criminal liability for the charges in the indictment was the same whether the underlying civil suit was true or false. Therefore, Simms's testimony was immaterial and not "of consequence to the determination of the action*." See* Fed. R. Evid. 401. The district court appropriately excluded evidence regarding the merits of Hobley's suit since it had no bearing on the government's charges.

---

[3] We also note that Simms's account does not establish the falsity of Hobley's torture allegations because Simms simply claimed that Hobley admitted to the crime and never mentioned torture in their conversation. Even if we accepted Simms's testimony at face value, the account would not directly contradict Hobley's allegations because he could have been guilty of arson, yet still have been tortured by Chicago police officers. Under such circumstances, it is difficult to characterize the government as "knowingly us[ing] false evidence" to obtain a conviction. *Napue*, 360 U.S. at 269 (emphasis added).

To the extent that Burge suggests that his culpability is diminished because his responses were given in the context of a civil interrogatory, we reject the assertion. *See United States v. Holland*, 22 F.3d 1040, 1047 (11th Cir. 1994) ("[W]e categorically reject any suggestion, implicit or otherwise, that perjury is somehow less serious when made in a civil proceeding."). Perjury and obstruction of justice are offenses against the integrity of the judicial system—not solely injuries to opposing parties in a civil suit. *See United States v. Dunnigan*, 507 U.S. 87, 97 (1993) (discussing role of perjury statutes in "uphold[ing] the integrity of our trial system"). Suspicion of Hobley's allegations did not grant Burge a license to invent whatever answers he preferred during discovery. A civil judicial proceeding is designed, in part, to determine the truth of what occurred between the parties in a dispute. If witnesses were free to lie whenever they believed a plaintiff's allegations were false, it would totally undermine the crucial mediating role of the courts. A basic irony also underlies Burge's claim that the civil suit was "a fraud" since his own misconduct has contributed to uncertainty regarding the confessions of Area 2 suspects like Hobley. *See Hinton v. Uchtman*, 395 F.3d 810, 821-22 (7th Cir. 2005) (Wood, J., concurring) (detailing the "mountain of evidence indicat[ing] that torture was an ordinary occurrence at [ ] Area Two"). We therefore reject any assertion that the indictment was grounded in falsity.

## C. Burge's False Statements Were Material

To be guilty of perjury under 18 U.S.C. § 1621(1), a defendant's false statement must be material. *See Dunnigan*, 507 U.S. at 94 ("A witness testifying under oath or affirmation violates [§ 1621(1)] if she gives false testimony concerning a material matter with the willful intent to provide false testimony . . . ."). A false statement is material if it has "a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it was addressed." *Neder v. United States*, 527 U.S. 1, 16 (1999) (citation omitted); *see also United States v. Howard*, 560 F.2d 281, 284 (7th Cir. 1977) (defining materiality for purposes of § 1621).[4]

In convicting Burge under § 1621(1), the jury was required to find that his false interrogatory responses were material—that is, that they had the "natural tendency" to influence the outcome of the *Hobley* case. Burge seeks a judgment of acquittal on this count, arguing that the evidence was insufficient to support the jury's finding for two reasons. First, the government provided no evidence that his misrepresentations were used or relied upon in the *Hobley* suit. Second, Burge's answers were immaterial because the government failed to prove conclusively that Hobley actually suffered any constitutional injury. Both of these contentions are meritless.

---

[4] There is no materiality requirement for obstruction under § 1512(c); the defendant must have only acted with corrupt intent to obstruct. *See United States v. McKibbins*, 656 F.3d 707, 712 (7th Cir. 2011).

The materiality of a false statement is evaluated at the time the statement is made. *Howard*, 560 F.2d at 284. Materiality does not depend on the ultimate decision reached by the body to which the false statement is addressed. *See United States v. Wesson*, 478 F.2d 1180, 1181 (7th Cir. 1973) ("[I]f a false utterance potentially interferes with the grand jury's line of inquiry, materiality is thereby established even though the perjured testimony does not actually impede the investigations."); *see also United States v. DeLeon*, 603 F.3d 397, 404 (7th Cir. 2010).

The question of whether the Chicago Police Department had a policy or practice of torturing suspects was a core component of Hobley's civil suit. In covering up Burge's record of torture, the false interrogatory responses withheld key evidence relevant to the civil suit. Therefore, materiality does not turn on whether Burge's answers were "used" in the *Hobley* trial. His false statements could not be introduced precisely *because* he had concealed relevant evidence. And while Burge is correct that Hobley had to prove constitutional injury to prevail in his suit, that issue is irrelevant to the materiality of Burge's lies. Whether the City of Chicago could be held liable for a policy or practice of torture is plainly distinct from whether *evidence* in the form of an interrogatory answer is material to determining whether the contested policy or practice exists. So the question before the jury was whether Burge's false statement had "the natural tendency to impede, influence or dissuade" the outcome of Hobley's civil suit—not whether the suit's outcome actually turned on the Burge's lies. *Howard*, 560 F.2d at 284. Hobley alleged a

policy or practice of torture. Burge's false responses regarding these very accusations are plainly material.[5]

## D.  No Constructive Amendment of Indictment

At the close of trial, the government requested and received a jury instruction on materiality that differed from language in the indictment. The indictment charged:

> It was material to the outcome of the civil law-
> suit whether in fact JON BURGE knew or partici-
> pated in torture and physical abuse of persons
> in Chicago Police Department custody.

The instruction to the jury read:

> An answer to an interrogatory is material if a
> truthful answer might reasonably be calculated
> to lead to the discovery of evidence admissible at

---

[5] Burge also objects to the exclusion of his expert witness, Daniel Locallo, who would have testified that Burge's statements would not have been material unless and until Hobley could prove he had suffered a constitutional injury. But experts do not instruct the jury on the law; the district court must do so itself. *See United States v. Sinclair*, 74 F.3d 753, 758 n.1 (7th Cir. 1996) ("Federal Rules of Evidence 702 and 704 prohibit experts from offering opinions about legal issues that will determine the outcome of a case. . . . [Experts] cannot testify about legal issues on which the judge will instruct the jury."). Locallo's characterization of materiality was incorrect and the district court acted properly in excluding his testimony on this point.

trial of the underlying lawsuit or otherwise affect its outcome. It is not necessary that the answer actually have that effect so long as it had the potential or capability of doing so.

Burge does not suggest that this instruction was an inaccurate statement of the law. Instead, he maintains that the district court constructively amended the indictment by improperly expanding the bases upon which the jury could convict beyond the indictment's charges. In other words, he says that the indictment limited its scope to only those responses relevant to the outcome in *Hobley*, but the jury's instructions were not so restricted.

This issue presents a somewhat closer question that turns on the distinction between a constructive amendment and a variance. A constructive amendment of an indictment occurs if jury instructions support a conviction for "a crime other than that charged." *United States v. Ratliff-White*, 493 F.3d 812, 820 (7th Cir. 2007) (citations and quotations omitted); *see also United States v. Trennell*, 290 F.3d 881, 888 (7th Cir. 2002) ("In order to rise to the level of constructive amendment, the change must establish offenses different from or in addition to those charged in by the grand jury."). A variance, on the other hand, does not "alter the essential substance of the charged offense." *United States v. Pigee*, 197 F.3d 879, 886 (7th Cir. 1999). In other words, "not every minor variance [between an indictment and jury instructions] constitutes a constructive amendment." *Id.*; *see also Trennell*, 290 F.3d at 888 (explaining that there is no constructive amendment "when the court's description of the indictment

alters the terms of the indictment in an insignificant manner"), and cases cited therein; *United States v. Kuna*, 760 F.2d 813, 817 (7th Cir. 1985) (explaining that "variances may be subject to the harmless error rule").

When read comprehensively, the district court's materiality instruction represents only a variance from the language of the indictment. In Burge's view, the district court's inclusion of "discovery of evidence admissible at trial" in the instruction arguably permitted the jury to find the materiality element satisfied based on a ground not charged in the indictment. He urges that the indictment required that his statements be material to the outcome, but the instruction *additionally* defined materiality as an answer leading only to the discovery of evidence. However, the distinction Burge attempts to draw may not be a meaningful one because any evidence admissible at trial would necessarily need to be relevant in the first place under Federal Rules Evidence 402. *See* Fed. R. Evid. 402 ("Evidence which is not relevant is not admissible."). *But see United States v. Arambula*, 238 F.3d 865, 868 (7th Cir. 2001) (suggesting that false testimony is "material when it [is] crucial to the question of guilt or innocence"); *see also United States v. McKenna*, 327 F.3d 830, 839 (9th Cir. 2003) (discussing different standards for determining materiality of statements). And while we need not delve too deeply into the various ways of determining materiality, we note that we have previously observed that "a lie influencing a pretrial issue, will, in an attenuated sense, influence the ultimate outcome of the case itself." *United States v. Galbraith*, 200 F.3d 1006, 1014 (7th Cir. 2000).

But more importantly, if a defendant is convicted of the same offense for which he was charged in the indictment, then any variance between the indictment and instructions is often benign. *Pigee*, 197 F.3d at 886; *see also United v. Willoughby*, 27 F.3d 263 (7th Cir. 1994). As we have explained before, "we are primarily concerned with changes made to the indictment that affect the elements of the crime." *United States v. Krilich*, 159 F.3d 1020, 1027 (7th Cir. 1998). Burge does not contest that he was convicted of the same charges for which he was indicted: violations of 18 U.S.C. § 1512(c)(2) and 18 U.S.C. § 1621(1). The instruction here did not change the elements of the crime, nor did it affect the evidence the jury would have relied upon to hold Burge liable for obstruction of justice and perjury. Moreover, Burge has failed to show any prejudice from this variance, as he clearly had reasonable notice of the charges against him and an adequate opportunity to prepare his defense. *See Ratliff-White*, 493 F.3d at 823; *Kuna*, 760 F.2d at 819. As a result, we find that any variance between the language of the indictment and jury instructions was harmless.

### E.  No Abuse of Discretion for Exclusion of Hearsay Testimony

At trial, the government presented a great deal of evidence related to Andrew Wilson, who was arrested for the murder of two police officers in 1982. Wilson alleged that while at Area 2, officers beat him, suffocated him with a plastic bag, electrocuted him and held his body against a radiator. Wilson died in prison before

Burge's trial, but the government introduced his testimony from three previous proceedings under Federal Rule of Evidence 804(b)(1).

Burge sought to introduce prior testimony of several officers whom Wilson had accused of participating in his torture. Officers John Yucaitis and Patrick O'Hara died before Burge's trial but Burge sought to introduce their prior testimony from Wilson's civil trial. Other officers, Thomas McKenna, Lawrence Hyman, and Fred Hill, had asserted the Fifth Amendment and Burge sought to compel their testimony. The district court declined to admit their testimony under the catch-all hearsay exception in Federal Rule of Evidence 807 or to compel the testimony of these witnesses.

There was no abuse of discretion in excluding this testimony. Rule 807 permits evidence to be admitted if it has sufficient "circumstantial guarantees of trustworthiness." Fed. R. Evid. 807(a)(1). In other words, hearsay testimony that does not fall under an exception may still be excluded under Rule 807 unless there are substantial indications of its reliability. The district court correctly concluded the contrary in this case. The officers accused of participating in Wilson's abuse would have had a motive to testify falsely to exculpate themselves. And Burge was permitted to challenge Wilson's allegations of abuse with a range of other witnesses who were able to testify directly and did not invoke the Fifth Amendment.

Furthermore, the excluded witnesses would have only testified as to the abuse of Wilson. Their testimony would have had no effect on the evidence of the other

victims of abuse, so any error was harmless. None of the district court's evidentiary rulings denied Burge the right to a fair trial.

### F.  No Error in Referencing Victim Impact Letter at Sentencing

At sentencing, the district court engaged in a lengthy, eight-page discussion of the factors supporting the above-guidelines sentence of 54 months that she imposed. After concluding that Burge had shown no remorse or respect for the law, the court briefly discussed a victim impact letter from an unnamed victim who was imprisoned at age 17 for a crime he says he did not commit. The court used this letter to demonstrate how Burge's crimes had undermined the integrity of our system of justice.

Burge objects that he was sentenced on the basis of unreliable evidence—a letter from an unnamed victim. This objection fails. At sentencing, Burge's attorney only raised an objection that the letter was inadmissible hearsay. It is well-established that hearsay is admissible at sentencing hearings. *United States v. Johnson*, 227 F.3d 807, 813 (7th Cir. 2000). District courts cannot make sentencing determinations on the basis of guesswork, but that is not what the trial court did here. The victim impact letters were included in the presentencing information distributed to Burge and he never specifically challenged the reliability of any of the victim impact letters. And in any event, the trial court devoted only a

very small portion of a lengthy colloquy to discussing the victim impact letter.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM Burge's conviction and the district court's sentence.